UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LEO McGEOGHEGAN and )
EILEEN McGEOGHEHAN, )
 )
        Plaintiffs, )
 )
    vs. ) No. 4:04-CV-1270 CEJ
 )
SPX DOCK PRODUCTS, INC., a )
foreign corporation formerly known as )
KELLEY COMPANY, INC., and )
SPX CORPORATION, )
a Delaware Corporation, )
 )
        Defendants. )

### MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendants SPX Dock Products and SPX Corporation for summary judgment. Plaintiffs have opposed this motion, and the matter is fully briefed.

### Factual Background

Plaintiff Leo McGeoghegan[1] was attempting to repair a Kelley "K" Series mechanical dock leveler[2] when the leveler's platform fell on him, resulting in severe injuries. A mechanical dock leveler is a device installed on loading docks in order to bridge the gap between the dock and trucks, which enables cargo to be driven off the vehicle. The dock leveler consists of a platform

---

[1] Plaintiff Eileen McGeoghegan asserts a claim for loss of consortium. For the purposes of this discussion, references to "plaintiff" in the singular mean Leo McGeoghegan.

[2] The manufacturer of the product at issue is SPX Dock Products, which is a subsidiary of co-defendant SPX Corporation and was formerly known as Kelley Company.

and a mechanism for raising the platform from its stored to its working position.  The mechanical workings of the dock leveler are situated in a pit beneath the platform.  To be accessed and repaired, the platform must be raised and secured while a mechanic performs the necessary maintenance.

In 1998, plaintiff was performing maintenance on a dock leveler at Johnson Controls' manufacturing facility in Jefferson City, Missouri.  He was replacing or repairing the power pack, which raises and lowers the platform into position during use. Plaintiff raised and secured the platform primarily with a crane and a hook attached to the edge of the platform, and also supported the sides with an angle iron and a straight crowbar.  Plaintiff was working underneath the heavy platform when all of the supports gave way, pinning him and causing extensive injuries resulting in paralysis.

The Kelley "K" Series dock leveler contains a maintenance strut located near the center of the unit.  It is undisputed that plaintiff was not using the maintenance strut at the time of the accident.  He contends that the length and position of the maintenance strut did not allow adequate access to the power pack, and that as a result, he routinely used other means of supporting the platform while performing repairs.  Plaintiff alleges that the length and location of the maintenance strut on the "K" Series dock leveler constitute a design defect, and if the maintenance strut had been properly designed, plaintiff would not have had to use an alternate means of support for the dock leveler and the platform

would not have fallen. Plaintiff also alleges that the warnings and instructions associated with the dock leveler were inadequate.

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

**Strict Liability - Design Defect**

Plaintiffs brings six claims against the defendants: two based on strict liability, three based on negligence, and a claim for loss of consortium. Defendants' motion to dismiss the plaintiffs' strict liability - design defect claim was filed before the Court ruled on their motion to exclude the plaintiffs' expert witness under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and was premised on an anticipated favorable ruling on the motion. The motion to exclude, however, was denied with respect to the expert's testimony about the alleged design defect. Even, if the expert testimony had been excluded on that issue, the defendants have not shown that they are entitled to judgment as a matter of law.

Missouri law requires plaintiffs to prove that a product was in a defective condition that made it unreasonably dangerous when put to a reasonably anticipated use, Rauscher v. General Motors, 905 S.W.2d 158, 160 (Mo.App. 1995), but "[t]he existence of a defect may be inferred from circumstantial evidence with or without the aid of an expert witness." Donovan v. Mishy Sportswear, Inc., 200 F. Supp. 2d 1103, 1107 (E.D. Mo. 2001). Defendants assume that because the product in question is an industrial machine unfamiliar to most jurors, an expert witness is necessary to explain the alleged defect. Defendants cite two design defect cases where summary judgment followed after the exclusion of the plaintiff's

expert witness, but fail to recognize that the matters to be explained in this case are significantly less complex.

In Shaffer v. Amada America, Inc., 335 F. Supp. 2d 992 (E.D. Mo. 2003), the plaintiff was injured when his fingers were crushed between two parts of a press brake machine that he was repairing. Although it was not clear exactly how the accident happened, a proposed expert would have testified that there were several ways that the machine could have been made safer. The court held that after excluding the plaintiff's expert witness, the only valid conclusion that could be drawn was that there had been an accident, not that the piece of machinery had been in an unreasonably dangerous condition. In Pillow v. General Motors Corp., 184 F.R.D. 304 (E.D. Mo. 1998), the court found that absent expert testimony showing that a safer master brake system was possible, there was no evidence that the plaintiff's vehicle was in an unreasonably dangerous condition, and so granted summary judgment for the defendant. Both of these cases involved complex machines and mechanical interactions well outside an average person's range of knowledge. Without an expert's opinion regarding possible design alternatives, there was no competent evidence about the safety of the machine. Although the defendants repeatedly refer to the dock leveler as "an involved piece of machinery," the relevant working parts of the dock leveler are not complex. With the aid of fact witnesses, a jury will be competent to understand the role of the maintenance strut in supporting the platform.

The plaintiffs have presented the affidavits of two witnesses, in addition to that of Leo McGeoghegan, who performed dock leveler repairs on a regular basis. The witnesses support plaintiff's contention that the maintenance strut was hard to use while replacing the power pack because the strut was too short or in the way. The jury would be entitled to conclude that the design of the strut made it foreseeable that a mechanic would use alternate, inferior means of supporting the platform, which in turn renders the product unreasonably dangerous.

**Strict Liability - Failure to Warn**

To prevail on a failure to warn claim, plaintiffs must prove that:

> 1) the defendant sold the product in the course of his business; 2) the product was then unreasonably dangerous when put to a reasonable use without knowledge of its characteristics; 3) the defendant did not give an adequate warning of the danger; 4) the product was used in a manner reasonably anticipated; 5) the plaintiff was damaged as a direct result of the product being sold without an adequate warning.

Nesselrode v. Executive Beechcraft, Inc., 707 S.W.2d 371, 382 (Mo. 1986). Defendants argue that in addition to a failure of proof on the unreasonably dangerous state of the dock leveler, plaintiffs cannot prove that the warnings of danger were inadequate.

On this claim, plaintiffs will not be able to rely on the opinion of their proffered expert, because the Court concluded that his methodology in examining the warnings and instructions was

insufficient.[3]  However, although the expert cannot opine that the warnings are inadequate, the jury can be informed of the appropriate standards for industrial warnings and decide whether the warnings met those standards.  The warnings are not complex, nor is the danger - - - if not properly supported, the platform may fall.

The interaction between the alleged design defect and the warnings is key, and is a matter of factual dispute.  If the jury decides that the maintenance strut could not be used when repairing the power pack, then warnings instructing a user to always use the maintenance strut are not relevant.  If the maintenance strut is suitable for all repairs, then there is still an issue of whether the warnings and instructions adequately informed a user of which supports to use.

Defendants raise the point that the plaintiffs must also prove causation, i.e., that the failure to warn of the danger caused Leo McGeoghegan's injuries.  They correctly state that Missouri law presumes that an adequate warning will be heeded, but not if the injured party knew of the danger, and then cite plaintiff's deposition testimony recognizing the danger inherent in changing a power pack on a dock leveler.  However, defendants define the danger at a very general level  - - - the danger in replacing the power pack. Although plaintiff recognized that it was dangerous to

---

[3] The only conclusion regarding warnings that the expert had drawn was that the instructions for replacing the power pack were "vague."

replace a power pack, there is a factual dispute about whether he knew that it was dangerous to support the ramp in the way he did. Thus, the issue is not appropriate for summary judgment.

Defendants also argue that because Bi-State (plaintiff's employer at the time) was instructed in safety procedures by Kelley Company, it was solely Bi-State's responsibility to pass those warnings on to the plaintiff. However, the case upon which defendants base this theory is distinguishable.

In <u>Budding v. Garland Floor Co., Inc.</u>, 939 S.W.2d 419 (Mo.App. 1996), plaintiff was an employee of Anheuser-Busch who was injured when exposed to the vapors from defendant's floor coating products. The plaintiff relied on <u>Griggs v. Firestone Tire and Rubber Co.</u>, 513 F.2d 851 (8th Cir. 1975), in which the Eighth Circuit recognized that Missouri law incorporates § 388 of the Restatement (Second) of Torts and contemplates a variable duty to warn dependent on the nature and degree of danger. Plaintiff argued that the manufacturer of the floor products should have warned him and other employees in the building of the dangers of the vapors produced by the products. However, the court held that although Missouri law recognized that "a manufacturer has a duty to warn ultimate users when the product is inherently dangerous," § 388 of the Restatement only applied to "one who supplies directly or through a third person a chattel for another to use." <u>Garland</u>, 939 S.W.2d at 424. The court decided that the manufacturer was the ultimate user of the product because it installed the floor products in the building, and to "require [defendant] to personally

-8-

notify [plaintiff] of the potential hazards would be unreasonable." Id. at 425.

The factual and legal situation in Griggs has more similarity to the case at bar. There, the plaintiff was a mechanic who sued the manufacturer of a tire and rim assembly that exploded when he was mounting it to a truck. The defendants argued that it had provided safety information to the immediate distributors of its rims, but the plaintiffs responded by alleging that such information seldom trickled down to the local service stations that actually performed the repairs. The court quoted § 388 of the Restatement (Second) of Torts at length, and held that "reasonable care may dictate that a warning be impressed directly on the article when (as here) the danger is great and such a warning would not be impracticable or unduly burdensome." Id. at 858. Missouri law, therefore, contemplates a test that considers both the nature of the danger and the practical considerations in adequately warning those who come into contact with a dangerous product.

Budding should be viewed as the outcome of this balancing test, not as an abridgment of a manufacturer's duty to provide sufficient warnings about dangerous product conditions simply because an intervening employer could also have warned the injured party. Although it may not have been practicable for the floor coating manufacturer to warn all who might be exposed to their products, the reasonableness inquiry is clearly fact-specific. Given the dangers of replacing power packs and the feasibility of placing a warning on the dock leveler itself, a duty to warn

exists.  Whether or not that duty was adequately discharged by the defendants is a question for the jury.

Plaintiff admits that he was familiar with a warning on the frame of the dock leveler which stated: "Warning, before servicing or adjusting unit, securely block adjustable ramp and hinge lip in up position."  During deposition, plaintiff recited the manner in which he would regularly "secur[e] the hinge lip in the up position."  Although it is somewhat unclear from the testimony, it appears that the parties were not discussing the support of the entire platform but rather a part on the dock leveler called the hinge lip.  Defendants argue that this warning and plaintiff's appreciation of it negate any inference (required to prove causation) that the absence of a warning led to plaintiff's injury.  Again, whether defendants adequately warned of the specific danger is for the jury to decide, as is whether any warning would be adequate if the power pack could not be removed with the maintenance strut in place.

Finally, the defendants argue that plaintiff must have realized the specific danger involved in supporting the platform with a crane and a hook because his employer's safety protocol prohibited this method.  However, plaintiff claims that he never received the safety protocol.  Hence, whether plaintiff was warned of the specific danger by his employer is another material issue of fact that renders a decision on the failure to warn claim inappropriate for summary judgment.

**Negligence and Loss of Consortium Claims**

Defendants argue that proving negligence requires a higher standard of proof, and if plaintiffs cannot carry their burdens under strict liability, their negligence claims also fail. Because the Court does not dismiss the strict liability claims, there is no basis for dismissing the negligence claims. Similarly, Eileen McGeoghegan's loss of consortium claim is derivative of the other causes of action, and does not fail as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that the defendants' motion [#32] for summary judgment is **denied**.

**IT IS FURTHER ORDERED** that the defendants' motion [#58] to supplement their motion for summary judgment is **denied as moot**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion [#55] to strike section III of defendants' reply memorandum is **denied as moot**.

```
_____
      CAROL E. JACKSON
      UNITED STATES DISTRICT JUDGE
```

Dated this 21st day of February, 2006.